Daniel Boleman McDaniel v. Commissioner. Grace Estelle McDaniel v. Commissioner.
McDaniel v. Commissioner
Docket Nos. 569, 570, 2440, 2441.
United States Tax Court
1944 Tax Ct. Memo LEXIS 146; 3 T.C.M. (CCH) 826; T.C.M. (RIA) 44272; August 7, 1944
*146 James H. Yeatman, Esq., A. E. Amerman, Esq., 2010 Gulf Bldg., Houston, Tex., and W. W. Bland, C.P.A., 3100 Gulf Bldg., Houston, Tex., for the petitioners. Donald P. Moyers, Esq., and L. R. Van Burgh, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These proceedings, duly consolidated, involve income tax deficiencies determined against petitioners for the calendar years and in amounts as follows: Daniel Boleman
Grace Estelle
Year
McDaniel
McDaniel
1937
$12,144.98
$12,144.98
1938
12,834.90
12,834.90
1939
12,697.92
12,697.91
1940
12,542.77
12,542.77
Each petitioner claims a refund for the year 1937 in the amount of $6,815.65. The above deficiencies result from several adjustments to the community net income as reported by petitioners some of which are contested by appropriate assignments of error and some of which are not contested. The errors assigned by each petitioner for all the taxable years involved are identical, and, unless otherwise indicated, the word "petitioner" as used herein will refer to petitioner Daniel Boleman McDaniel. The issues which have been raised by appropriate assignments of error are as follows: 1. Was the *147 business conducted during the taxable years involved under the name of "D. B. McDaniel, Drilling Contractor" a partnership or joint venture between petitioner and one O. C. Russell in which petitioner owned a 5/6 interest and Russel a 1/6 interest? 2. Were petitioners during the taxable years the owners of 400 shares of the capital stock of the Gulf Coast Drilling & Production Company, or only 5/6 thereof? 3. Is the alleged joint venture or partnership or D. B. McDaniel Drilling Contractor as a sole proprietorship, entitled to a deduction in the year 1937 of the amount of $5,606.65, representing the cost of the casing and other equipment remaining in a dry hole drilled on the Matagorda County lease, in 1936, where the lease was reassigned back to the lessors in 1937? 4. Did the respondent err in increasing petitioners' community income for the year 1938 by the amount of $1,445.25 as representing additional capital gain from the liquidation of Grace Opal Royalty Company? 5. Did the respondent err in increasing petitioners' net community income for 1938 by the amount of $5,000 representing a withdrawal by Russell of profits from the alleged joint venture of petitioner and Russell? *148 6. Did the respondent err in increasing petitioners' net community income for 1939 by the amount of $6,530.55 representing a certain payment received from Gulf Coast Drilling & Production Company? 7. Did the respondent err in decreasing petitioners' net community income for each of the years 1939 and 1940 by the amount of $6,000 each year as representing an alleged salary paid to Russell? Findings of Fact Petitioners are husband and wife and are residents of the State of Texas. Their returns for the taxable years involved were rendered on the community property basis and were filed with the Collector for the First District of Texas. Any income referred to herein as the income of petitioner D. B. McDaniel is the community income of both petitioners. For the year 1937, petitioners reported a net community income of $292,526.63, which the respondent in a statement attached to the deficiency notice adjusted as follows: Net community income as disclosed
by return
$292,526.63
Unallowable deductions
and additional in-
come: (a) Salary
$51,666.00
(b) Taxes
1,355.82
(c) Errors on return
60.00
(d) Matagorda lease
loss
5,606.65
(e) Interest income
76.50
(f) Plummer McDaniel
130.69
(g) Depreciation
5,948.83
64,844.49
Total
$357,371.12
Nontaxable income and
additional deductions: (h) Depletion - Wilburn
lease
3,456.68
(i) Embezzlement loss
17,152.50
(j) Nontaxable dividend
2,830.37
(k) Drilling expense
3,140.26
26,579.81
Net community income adjusted
$330,791.31
*149 Issue No. 1 concerns adjustments (b), (c), (f), (g), (h), (j) and (k). Issue No. 2 concerns adjustment (a) and Issue No. 3 concerns adjustment (d). Adjustments (e) and (i) represent adjustments to petitioners' personal community income and are accepted by petitioners as correct. In the statement attached to the deficiency notice in Docket Nos. 569 and 570 the respondent explained adjustment (a) as follows: "(a) It is held that you were not engaged in a joint venture with Omar Coleman Russell in the years 1937, 1938, and 1939 and that the amounts paid by you to him in those years were paid as compensation for services. Of such amounts the sum of $6,000.00 is a reasonable allowance for salary for each year and that amount is allowed as a deduction in each of the years 1937, 1938 and 1939. Items reported on the partnership return, Form 1065, as the operations of the alleged joint venture for the year 1939 under the name of "D. B. McDaniel, Drilling Contractor" and similar items under the same caption in your amended return for the year 1938 have been herein included in the computation of your individual income." For the year 1938, petitioners reported a net community income of $197,161.79, *150 which the respondent in a statement attached to the deficiency notice adjusted as follows: Net community income as disclosed
by return
$197,161.79
Unallowable deductions
and additional in-
come: (a) Lapsed leases
$ 2,088.30
(b) Profit on automo-
biles
484.25
(c) Interest income
412.56
(d) Grace Opal Royalty
Co.
1,445.25
(e) Depreciation
3,985.30
(f) Capital loss
490.35
(g) Depletion
30.68
(h) Partnership income
109.84
(i) Salary
39,999.33
(j) Drilling expense
3,140.26
52,186.12
Total
$249,347.91
Nontaxable income and
additional deductions: (k) Loss on automo-
bile
$ 406.73
(l) Nontaxable divi-
dends
9,287.24
$ 9,693.97
Net community income adjusted
$239,653.94
Issue No. 1 concerns adjustments (a), (e), (f), (g), (h), (j), (k) and (1). Issue No. 2 and Issue No. 5 concern adjustment (i). Issue No. 4 concerns adjustment (d). Adjustments (b) and (c) represent adjustments to petitioners' personal community income and are accepted by petitioners as correct. For the year 1939, petitioners reported a net community income of $162,186.56, which the respondent in a statement attached to the deficiency notice adjusted as follows: Net community income as disclosed
by return
$162,186.56
Unallowable deductions
and additional in-
come: (a) Dividends
$38,004.40
(b) Depletion
119.33
(c) Depreciation
3,324.87
(d) McAlbert Oil Co.
22,852.97
(e) Gulf Coast Drilling
& Production Co.
6,530.55
(f) Bad debt
350.00
(g) Checks cancelled
685.76
(h) Plummer &
McDaniel
69.36
71,937.24
Total
$234,123.80
Nontaxable income and
additional deductions: (i) Long-term capital
loss
$ 574.65
(j) Contributions
450.00
(k) Temple lease
1,960.00
(l) Ranch expense
2,743.20
(m) Drilling expense
11,161.59
(n) Operating loss
5,404.35
(o) Salary
6,000.00
28,293.79
Net community income adjusted
$205,830.01
*151 Issue No. 1 concerns adjustments (b), (c), (d), (f), (g), (h), (i), (j), (k), (m) and (n). Issue No. 2 concerns adjustment (a). Issue No. 6 concerns adjustment (e) and Issue No. 7 concerns adjustment (o). Adjustment (l) represents an adjustment to petitioners' personal community income and is accepted by petitioners as correct. For the year 1940, petitioners reported a net community income of $152,241 which the respondent in a statement attached to the deficiency notice adjusted as follows: Net community income as disclosed
by return
$152,241.00
Unallowable deductions
and additional in-
come: (a) Dividends
$31,666.67
(b) Partnership
119.71
(c) Excessive deprecia-
tion
45.55
(d)Woodlawn Oil Cor-
poration, Inc.
stock
4,863.58
(e) Income from Wood-
lawn Oil Corp.,
Inc.
11,161.59
(f) Excessive deprecia-
tion lease equip-
ment
1,811.24
(g) Excessive depletion
208.29
49,876.63
Total
$202,117.63
Nontaxable income and
additional deductions: (h) Salary paid
$ 6,000.00
(i) Net loss D. B.
McDaniel Drilling
Contractor
2,401.34
(j) Contributions
903.88
(k) Farm expenses
281.93
(l) Shortage
751.26
10,338.41
Net community income adjusted
$191,779.22
Issue No. *152 1 concerns adjustments (b), (c), (d), (e), (f), (g), (i) and (j). Issue No. 2 concerns adjustment (a), and Issue No. 7 concerns adjustment (h). Adjustments (k) and (l) represent adjustments to petitioners' personal community income and are accepted by petitioners as correct. A certificate of assessments and payments of income tax by petitioners for the years 1937, 1938, 1939 and 1940 signed by the Collector of Internal Revenue for the First District of Texas is incorporated by reference as a part of these findings. On May 21, 1940, each petitioner filed with the collector a claim for refund of income tax paid for the year 1937 in the amount of $11,949.67. On March 15, 1941, each petitioner filed with the collector an amended claim for refund of income tax paid for the year 1937 in the amount of $17,500. Issue No. 1. Petitioner, during the taxable years 1937, 1938, 1939 and 1940, was principally engaged in the development and production of oil. Since 1912 petitioner has been continuously engaged in the oil business in one form or another, including that of drilling contractor. About 1908 petitioner met O. C. Russell, an individual, while they were working as laborers in an *153 oil field in Louisiana. Petitioner and Russell are not related to one another either by blood or marriage. They have been associated together in drilling oil wells and doing other field work at different times since they first met. Petitioner worked for Russell for awhile in 1912 and Russell worked for petitioner for about a year beginning in the Fall of 1923. In 1926 petitioner was engaged in the business of drilling oil wells. In the early part of that year he had drilled three wells in Texas. On July 4, 1926, he entered into an oral contract to drill some wells for the Yount-Lee Oil Company of Beaumont, Texas, in the Spindle Top Oil Field. The number of wells to be drilled was not specified, but Yount-Lee promised petitioner a year's work. Actually 27 wells were drilled under the contract at a cost to Yount-Lee of over half a million dollars. Petitioner contacted Russell on or about July 10, 1926, and arranged with him to superintend his drilling operations and other oil interests in the field. Petitioner at the time was building an organization and acquiring a number of new drilling rigs. Except for one drilling rig, petitioner's old equipment was obsolete and had been junked. *154 The arrangement between petitioner and Russell was in substance that which was stated later in a letter to H. A. Wolfe, Internal Revenue Department, Houston, Texas, dated June 3, 1935, and signed by petitioner D. B. McDaniel. In said letter petitioner described the arrangement which he entered into with Russell on July 5, 1926, as follows: "On July 5th, 1926, I entered into a verbal agreement with Mr. Russell whereby he was to receive one-sixth (1/6) of all my net income in addition to a certain monthly stipulated salary as compensation for acting as Superintendent of all my drilling operations and other interests. "We have been working under this agreement since that time and will continue to do so until such time, by mutual agreement, the working arrangement be changed." This same arrangement above described continued between petitioner and Russell, with the exception of the ownership of 400 shares of stock in the Gulf Coast Drilling and Production Company hereinafter covered by our findings of fact under Issue No. 2, until October 24, 1939, when McDaniel and Russell entered into a written joint venture or partnership agreement. This joint venture or partnership agreement dated *155 October 24, 1939, together with a supplementary agreement clarifying in certain particulars the agreement of October 24, 1939, are incorporated herein by reference. When the verbal agreement was entered into by McDaniel and Russell on July 5, 1926, to avoid the necessity of submitting expense accounts, it was agreed that petitioner and Russell would each have drawing accounts for which they would not have to account. At the outset petitioner's drawing account was $500 per month and Russell's $400 per month. The amounts were increased and changed from time to time and in later years petitioner ceased to withdraw a monthly allowance. In the earlier years of the operations the withdrawals of petitioner and Russell were limited to their drawing accounts. The remaining profits were either used to pay for drilling rigs purchased on credit or otherwise placed back into the business. In the earlier years of the business Russell did not receive any of the profits over and above his drawing account as extra compensation and all of the net profits were returned by petitioner as his own for taxation. Petitioner's individual return for 1933 reported a payment to Russell of $49,384.14 which was *156 designated in a schedule attached to the return as "Salary". On June 3, 1935, when petitioner's return for 1933 was under examination by a revenue agent, petitioner wrote a letter to revenue agent H. A. Wolfe of Houston, Texas, in which he said: "In compliance with your request I herewith give you an explanation of the money received by Mr. O. C. Russell and deducted by me from my normal taxable income. "On July 5th, 1926, I entered into a verbal agreement with Mr. Russell whereby he was to receive one-sixth (1/6) of all my net income in addition to a certain monthly stipulated salary as compensation for acting as Superintendent of all my drilling operations and other interests. "We have been working under this agreement since that time and will continue to do so until such time by mutual agreement, the working arrangement be changed." On December 30, 1936, petitioner executed and filed with the revenue agent's office a sworn protest in connection with the tax liability of himself and wife for the year 1935, which was prepared by his agent and attorney-in-fact and which stated in part as follows: "Agent has disallowed amounts paid O. C. Russell as compensation for services based *157 upon an oral agreement made in 1926. Mr. Russell is retained by Mr. McDaniel to look after all properties in which he (McDaniel) has an interest. The arrangement was made when Mr. McDaniel was endeavoring to develop a number of new fields. In the beginning the arrangement did not yield any substantial return to Mr. Russell, but with developed production, for which he was somewhat instrumental, the proportion of Mr. McDaniel's profits, which by the terms of the verbal agreement were payable to Mr. Russell grew substantially and payments made him in 1936 truly represent Mr. McDaniel's contract obligation to Mr. Russell. "It must be borne in mind that Mr. Russell is Mr. McDaniel's personal representative in the field. He is responsible only to Mr. McDaniel, but, in an advisory capacity, supervises the operation of properties owned by corporations in which Mr. McDaniel has an interest as well as directing operation where the production is independently Mr. McDaniel's, and also where development is in progress. His salary or compensation is made, therefore, dependent upon results. "The provisions of Section 45 of the Revenue Act of 1934 are not applicable because the payments made Mr. *158 Russell by Mr. McDaniel represent compensation for services rendered him. Others, while probably benefitting by Mr. Russell's suggestions upon questions of operation and development, are in no wise obligated to compensate him and do not do so." For the year 1939 petitioner and Russell filed a joint venture or partnership return on Form 1065 under the name of "D. B. McDaniel, Drilling Contractor" and reported thereon a net operating loss of $32,426.05; a net short-term capital loss of $1,100; a net long-term capital loss of $6,895.87; a dividend from Gulf Coast of $228,026.38; and total contributions of $2,670. These amounts were allocated 5/6 to petitioner and 1/6 to Russell as follows: Item
Petitioner
Russell
Net operating loss
$ 27,021.70
$ 5,404.35
Net short-term capital
loss
916.67
183.33
Net long-term capital
loss
5,746.57
1,149.30
Dividend from Gulf Coast
190,021.98
38,004.40
Contributions
2,225.00
445.00
For the year 1940 petitioner and Russell filed a joint venture or partnership return on Form 1065 under the name of "D. B. McDaniel, Drilling Contractor" and reported thereon a net operating loss of $19,658.04; a dividend from Gulf Coast of $190,000; *159 and total contributions of $5,423.30. These amounts were allocated 5/6 to petitioner and 1/6 to Russell as follows: Item
Petitioner
Russell
Operating loss
$ 17,256.70
$ 2,401.34
(Allowance $875 added
to Russell and de-
ducted from peti-
tioner)
Dividend from Gulf
Coast
158,333.33
31,666.67
Contributions
4,519.42
903.88
All of the assets belonging to D. B. McDaniel, Drilling Contractor and registered in the name of petitioner, which have been sold at different times, have been accounted for to Russell who has either received in cash his 1/6 of the net gain or has had the amount of gain or loss charged or credited to his account. In his returns prepared by his bookkeeper V. L. Roby for the years 1937 and 1938, petitioner included all of the income from the operations of "D. B. McDaniel, Drilling Contractor" as well as all of the dividends received by him on the 400 shares of Gulf Coast stock and deducted the amounts paid Russell as "salary" or "bonus". Petitioner did not prepare the returns and did not closely inspect them. He had no knowledge of bookkeeping and no experience in filing income tax returns. Roby was later discharged by petitioner for embezzlement *160 and general incompetency. Unemployment Compensation Tax was paid in 1938 to the Texas Unemployment Compensation Commission on the amount distributed to Russell in the year 1937. The State of Texas sued "D. B. McDaniel, Drilling Contractor" in the 98th District Court of Travis County, Texas, for additional Social Security taxes on the sums distributed or paid to Russell. D. B. McDaniel, Drilling Contractor, filed a cross-action for recovery of the tax already paid on the Russell distributions. The cases were heard on their merits. On December 17, 1942, the Court entered judgment to the effect that the business conducted under the name of "D. B. McDaniel, Drilling Contractor" was in law and in fact a copartnership composed of petitioner and Russell; that none of the moneys received from said business by Russell were wages within the meaning of the Texas Unemployment Compensation Act and ordered that the Commission refund to petitioner all sums paid it through error as contributions on the respective amounts of money received by Russell from the copartnership business since March 1, 1938, or $1,218.37. The judgment became final without appeal and the refund was received by the petitioner *161 in 1943. The record herein does not contain the evidence upon which the judgment was based. On the returns filed by petitioner for the years 1927 to 1938, inclusive, the amounts paid to Russell, including Gulf Coast dividends, were designated as bonus, salary, additional compensation, and were deducted by petitioner from his gross income in determining net income. The returns filed by Russell for the years prior to 1933 have been destroyed by the Internal Revenue Bureau and are no longer available. The returns filed by Russell for the years 1933 to 1938, inclusive, report the amounts which he recovered from D. B. McDaniel, Drilling Contractor, including his share of Gulf Coast dividends, as salary. During the taxable years 1937, 1938, and 1939 up to the date of the signing of the joint venture or partnership agreement, Russell was an employee of petitioner and a reasonable compensation for his services rendered during each of those years was $6,000 per annum. In none of the returns filed by petitioner for the years 1926 and 1927 and 1929 to 1938, inclusive, was any reference made to the existence of a joint venture or partnership between petitioner and Russell. At some time during *162 1930 or 1931 petitioner and Albert Plummer formed a partnership for the purpose of owning and operating a number of oil leases under the name of Plummer and McDaniel. Petitioner and Plummer each owned one half interest in this partnership. A set of partnership books were kept in the office of Plummer and partnership returns have been filed since 1931. The partnership was still in existence on the date of the instant hearing. Petitioner's share of the distribution from the Plummer and McDaniel partnership was placed in the "D. B. McDaniel, Drilling Contractor" account. Issue No. 2. Gulf Coast was incorporated November 7, 1931, with an authorized capital stock of $20,000 divided into 800 shares of a par value of $25 each and issued as follows: Petitioner
399 shares
Plummer
399 shares
Roby
1 share
W. E. Trautwein
1 share
The shares issued to Roby and Trautwein were held as qualifying shares for petitioner and Plummer, respectively. The stock was issued in exchange for a 1/3 interest in the Tyiska lease at a cost price of $15,731.84 and subscriptions of $4,268.16, which were paid in cash. Russell owned a 1/6 interest in 1/2 of the 1/3 interest in the Tyiska lease, *163 which was assigned to Gulf Coast partly in exchange for the stock. One half of the cash of $4,268.16 or $2,134.08 paid to Gulf Coast for the stock was paid by check drawn on the "D. B. McDaniel, Drilling Contractor" account. The 400 shares were issued in the name of petitioner or his nominee because Russell wanted it done that way. On June 1, 1933, Certificate No. 5 for 50 shares was issued to Russell out of original Certificate No. 2 for 399 shares issued to petitioner. This certificate was delivered to Russell in person. He gave it to the office girl and she placed it in his file. The certificate for 50 shares did not represent a 1/6 interest in the 400 shares of Gulf Coast stock held in the name of petitioner. Petitioner called the error to Russell's attention at the time the dividend was paid later in the year 1933. Russell instructed petitioner to void or cancel the certificate and to hold the 66 2/3 shares of stock in trust for him. Certificate No. 5 was marked void and endorsed to petitioner by Russell on January 6, 1934. At the time Gulf Coast was incorporated petitioner had agreed to hold the stock in trust for Russell. They had discussed this trust through the years since *164 the company was formed and petitioner at all times recognized the existence of Russell's ownership of the stock. The entire 1/6 of the dividends received on the Gulf Coast stock throughout the years was paid or credited to Russell by petitioner. On January 6, 1934, petitioner and Russell entered into an agreement in the form of a letter from Russell to petitioner the body of which is as follows: "Pursuant to our agreement of even date, I hereby will transfer and convey as well as sign over to you at the date of my death any interest that I might own in any stock of any company or companies in which you might own stock, for a sum equal to the fair market value of same on date of my death, but the entire interest if any, I own, shall not be in value more than Thirty Thousand Dollars ($30,000.00) nor shall you be required to pay more for such interest. "It is understood that the fair market value at the date of my death shall be interpreted to mean that if my interest should be actually less than Thirty Thousand Dollars ($30,000.00) then that amount shall be declared the fair market value and shall be paid; however, if my interest should be declared in value actually more than Thirty *165 Thousand Dollars ($30,000.00) then the said Thirty Thousand Dollars ($30,000.00) shall be paid and no more." The contract of October 24, 1939, between petitioner and Russell provided with respect to the Gulf Coast stock that: "Notwithstanding any provision contained in any paragraph hereof, in so far as 400 shares of stock in the Gulf Coast Drilling & Production Company standing in the name of D. B. McDaniel are concerned, it is agreed as follows: "1. It is agreed that said stock when issued to D. B. McDaniel at the date of the incorporation of the Gulf Coast Drilling & Production Company was in truth and in fact owned by D. B. McDaniel in the proportion of five-sixths (5/6) to D. B. McDaniel and one-sixth (1/6) to O. C. Russell, the same having been paid for out of reinvested profits, and the same is not chargeable with any deductions except such as may arise in the future which would be a proper charge against the entire stock standing in the name of D. B. McDaniel. "2. It was expressly agreed between D. B. McDaniel and O. C. Russell at the date of the issuance of said stock to D. B. McDaniel, that it should remain in his name and that the one-sixth (1/6) of O. C. Russell should *166 remain under the complete control and management of D. B. McDaniel and could not be sold or transferred by O. C. Russell without the consent of D. B. McDaniel, his heirs, successors or assigns, but by mutual agreement all of said stock should remain in same status as that of D. B. McDaniel's five-sixths (5/6) of said stock, and sold or disposed of only as D. B. McDaniel's five-sixths (5/6) was sold or disposed of. The said O. C. Russell's one-sixth (1/6) of said stock shall remain under the control and power of disposition of D. B. McDaniel until he shall sell or otherwise dispose of his five-sixths (5/6) of said stock, and this shall be his irrevocable power of attorney to so handle the stock of O. C. Russell, and in the event of his death this power shall be exercised by any person, firm or corporation designated by D. B. McDaniel in his will as Executor or Trustee to manage his estate, or any person, firm or corporation that may be otherwise designed by D. B. McDaniel in his lifetime by any character of written instrument." The 400 shares of Gulf Coast stock were sold to the Atlantic Refining Company on September 25, 1943, for a consideration of $3,150,000. Russell was consulted *167 concerning the sale and agreed to it being made. Atlantic's check for $3,150,000 was deposited in petitioner's personal bank account and petitioner drew his personal check in favor of Russell for $519,331.22, which represented 1/6 of the net sale price of the stock after deduction of the expenses of sale. Petitioner took a receipt from Russell for payment of $519,331.22 which recited that payment represented the "sale price less 1/6 of the cost of sale of my 66 2/3 shares of stock in the Gulf Coast Drilling & Production Company sold to Atlantic Refining Company, which stock has been held in trust for me by D. B. McDaniel since the date of original issue." In acquiring the Gulf Coast stock the Atlantic Company required petitioner, as president of Gulf Coast, to certify as to its ownership. It was recited in the certificate that the 66 2/3 shares of stock owned by Russell appeared in the name of petitioner under a trust agreement with Russell. Atlantic also required petitioner and Russell to warrant to it that they were the owners of 333 1/3 and 66 2/3 shares of Gulf Coast stock, respecivvely, and that the same were free from all liens and encumbrances, all of which was done. There *168 was no agreement or understanding whatever that Russell was to ever return any of the money paid him by petitioner as 1/6 of the net proceeds from the sale of the Gulf Coast stock. This money was paid over to Russell as his property. During all the taxable years here in question petitioner owned 333 1/3 shares of the stock of Gulf Coast Drilling and Production Company and O. C. Russell owned 66 2/3 shares of stock in said corporation. Of the dividend checks which petitioner received on 400 shares of Gulf Coast stock in the taxable years, 5/6 belonged to petitioner and 1/6 belonged to Russell. The 1/6 of such dividends which petitioner paid or credited to Russell in said taxable years were not paid to him as salary but were paid to him because he was the beneficial owner of 1/6 of the 400 shares of Gulf Coast stock. Issue No. 3. In a statement attached to the deficiency notice in Docket Nos. 569 and 570, the respondent explained adjustment (d) for the year 1937 as follows: "(d) This amount represents the portion of the total loss claimed in 1937 which represents casing and other unrecoverable items lost in 1936 when the well was completed as a dry hole." On July 6, 1936, petitioner *169 acquired an assignment of two oil and gas leases covering lands situated in Matagorda County, Texas. The terms of the assignment were in part as follows: "As a part of the consideration for this assignment the said D. B. McDaniel binds and obligates himself at his own cost and expense to commence a well upon the land covered by one or the other of the aforesaid leases, within one hundred twenty (120) days from the date hereof, and after said well has been once begun to prosecute the same with reasonable diligence and in a workmanlike manner to a depth of seven thousand six hundred (7600) feet unless oil or gas is found in paying quantities at a lesser depth, or unless heaving shale, salt or other dome formations be encountered at a lesser depth. If oil or gas in paying quantities is discovered and produced in the drilling of said well the same shall be equipped for production by the said D. B. McDaniel." Petitioner drilled a dry hole on one of the leases during the year 1936. In June 1937 petitioner reassigned the leases back to the assignors of the July 6, 1936 assignment. At the time the leases were reassigned the cost of the casing and other equipment remaining in the dry hole *170 was $5,606.65. Issue No. 4. This issue concerns adjustment (d) for the year 1938. The Grace Opal Royalty Company was liquidated in the year 1938. The respondent reduced petitioners' basis for gain or loss on the liquidation by the amount of $4,790.64 on the theory that dividends paid in the years 1934 and 1935 were paid out of capital to that extent, and has increased petitioners' net community income as disclosed by their returns by the amount of $1,445.25, computed as follows: Profit shown in return in liquidation
$13,969.37
Capital returned in distribution of prior years
4,790.64
Share of additional tax set up in corporate liquidation
(1,900.14)
Amended profit in liquidation
$16,859.87
Owned more than two years, taxable 50%
8,429.93
Amount shown in return
6,984.68
Additional income (joint venture)
$ 1,445.25
Issue No. 5. This issue concerns a part of adjustment (i) for the year 1938. Under this adjustment the respondent increased petitioners' net community income as disclosed by their returns by the amount of $39,999.33 on the ground that this amount represented disallowed compensation paid to Russell. The amount was made up of two items, namely, *171 (1) dividend from Gulf Coast paid by petitioner to Russell in the amount of $34,999.33 and (2) withdrawal of profits by Russell, to which he was entitled under his agreement with McDaniel, in the amount of $5,000. Issue No. 6. In a statement attached to the deficiency notice in Docket Nos. 569 and 570, the respondent explained adjustments (e) for the year 1939 as follows: "(e) It is held that during the year 1939 in adjustments of accounts with Gulf Coast Drilling and Production Company, you received as ordinary income the amount of $6,530.55." The parties have stipulated that this adjustment should be disposed of by including one half of the amount of $6,530.55 in gross income for the year 1939. Issue No. 7. This issue concerns adjustment (o) for the year 1939 and adjustment (h) for the year 1940. In a statement attached to the deficiency notices in Docket Nos. 569 and 570, adjustment (o) was explained as follows: "(o) Salary paid to O. C. Russell, allowable as a deduction, not claimed. See explanation for item (a), year 1937." In a statement attached to the deficiency notices in Docket Nos. 2440 and 2441, adjustment (h) was explained as follows: "(h) It is held that *172 you were not engaged in a joint venture with Omar Coleman Russell and that the amounts paid by you to him were paid as compensation for services. Of such amounts the sum of $6,000.00 is a reasonable allowance for salary and that amount is allowed as a deduction. Items reported on the partnership return, Form 1065, as the operations of the alleged joint venture under the name of "D. B. McDaniel, Drilling Contractor" have been herein included in the computation of your individual income." Opinion BLACK, Judge: These proceedings present two principal questions of face, namely, Issues Nos. 1 and 2. There are also several minor issues which will require consideration in their turn. Issue No. 1. The first question is whether during the taxable years 1937 to 1940, inclusive, Russell was petitioner's employee, as respondent contends, or whether petitioner and Russell were members of a joint venture or partnership operating under the name of "D. B. McDaniel, Drilling Contractor" and sharing profits and losses on the basis of 5/6 and 1/6, respectively, as petitioner contends. The applicable statute for the year 1937 is section 1001 (a) (3) of the Revenue Act of 1936; for the year 1938, *173 section 901 (a) (3) of the Revenue Act of 1938; and for the years 1939 and 1940, the applicable statute is section 3797 (a) (2) of the Internal Revenue Code. As far as is material here these statutory provisions may be considered as identical, those of the Code being set out in the margin. [1]
In deciding Issue No. 1 much evidence, oral and documentary, has had to be weighed and considered. If only the oral testimony of petitioner and Russell and three other witnesses, Thomas, Perkins and Works were to be considered, we would hold that the arrangement between McDaniel and Russell was from its inception *174 in 1926 a joint venture or partnership. But in deciding this issue there is a great deal more that has to be considered than the oral testimony. A very large amount of documentary evidence of one kind and another bearing upon this issue is in the record and it must be weighed and considered, as well as the oral testimony of witnesses. It is, of course, impossible to set out in our report all of the evidence. Much of it is contradictory and confusing and evidences a loose arrangement between McDaniel and Russell until they reduced their agreement to writing October 24, 1939. We do not think that prior to this time we would be justified in holding that petitioner and Russell were joint venturers or partners. For example, as shown in our findings of fact, on June 3, 1935, when petitioner's return for 1933 was under examination by a revenue agent, petitioner wrote a letter to the revenue agent in which, among other things, he said: On July 5th, 1926, I entered into a verbal agreement with Mr. Russell whereby he was to receive one-sixth (1/6) of all my net income in addition to a certain monthly stipulated salary as compensation for acting as Superintendent of all my drilling operations *175 and other interests. A statement to substantially the same effect was made by petitioner's representative, McCullough, in a protest which he executed and filed with the internal revenue agent's office on December 30, 1936, in connection with the tax liability of petitioner and his wife for the year 1935. Also petitioner's income tax returns filed for all the years prior to 1939 made no mention of any partnership or joint venture between petitioner and Russell and treated the profits and losses of D. B. McDaniel, Drilling Contractor as his own and the amounts paid to Russell as bonus, salary or additional compensation. This treatment seems to accord with the facts as we have best been able to ascertain them from the confusing and contradictory record which we have before us. There is one exception to the foregoing statement however. We do think that the facts in the record show that by agreement and understanding between McDaniel and Russell from the very time the 400 shares of stock in the Gulf Coast Drilling and Production Company were issued, it was agreed that they should be owned 5/6 by McDaniel and 1/6 by Russell. Therefore, Russell's 1/6 of these dividends which were received *176 by petitioner and paid over to Russell in the taxable years were incorrectly reported by petitioner as his income and then deducted as salary paid Russell. More will be said about these dividends under Issue 2. Under the findings of fact which we have made with reference to Issue 1 we hold that the income or losses of D. B. McDaniel, Drilling Contractor for the years 1937, 1938 and 1939 must be treated as the income or losses of petitioners and not as those of a joint venture between McDaniel and Russell. The above statement does not include the dividends on the Gulf Coast stock. Those are to be treated in accordance with our holding on Issue No. 2. In computing net profits of D. B. McDaniel, Drilling Contractor a deduction of $6,000 salary for Russell's service as petitioner's superintendent of drilling operations and for services in the field will be allowed for each of the taxable years 1937, 1938 and 1939, where that much has been paid him, exclusive of dividends on the Gulf Coast stock. We do not understand there is any controversy between the parties as to the amounts paid over to Russell by petitioner, including the dividends on Gulf Coast stock, in each of the taxable years *177 1937, 1938 and 1939. As far as the year 1939 is concerned, we would hold that the receipts and disbursements of D. B. McDaniel, Drilling Contractor up to the signing of the agreement October 24, 1939, should be treated as those of petitioners and that the income and disbursements of the joint venture or partnership created by the written instrument from October 24, 1939, to the end of the year 1939, should be treated as partnership income if there were any segregation. There is none however. There are no figures in the record from which we could make such a segregation. Therefore, we think we must treat the income and deductions of D. B. McDaniel, Drilling Contractor for 1939 the same as we treat them for 1937 and 1938. For the year 1940 the written agreement entered into by the parties October 24, 1939, was in full force and effect. Therefore, we hold that the income and deductions of D. B. McDaniel, Drilling Contractor for 1940 were the partnership income and deductions of McDaniel and Russell, 5/6 to McDaniel and 1/6 to Russell and petitioner's method of reporting it in that manner was correct. The respondent's method of treating all the income of D. B. McDaniel, Drilling Contractor *178 for the year 1940 as petitioner's income is not sustained. This means, of course, that the salary of $6,000 to Russell, allowed by respondent as a deduction in his computation of the deficiencies against petitioners for the year 1940 is also not sustained. Russell's share of profits for 1940 of the partnership are taxable to him whether distributed or not, including, of course, any salary which may have been paid to him, and petitioners' share of the profits of the partnership are taxable to them whether distributed or not. Respondent argues in his brief that the written agreement between McDaniel and Russell dated October 24, 1939, should not be given any effect in the decision of the issues in any of the years which we have before us. We do not agree with this contention. We hold that the written agreement had no retroactive force and effect but for reasons we have already stated, we hold that it effected a partnership agreement between McDaniel and Russell from and after its date of October 24, 1939. Issue No. 2. The question here is whether during the taxable years 1937 to 1940, inclusive, petitioner was the owner of 400 shares of Gulf Coast stock or whether he held 1/6 *179 of those shares in trust for Russell. During these years the stock paid large dividends and petitioner paid over or credited to Russell 1/6 of the dividends he received. The respondent has included the entire dividends in petitioners' community income and has treated the part paid over to Russell as a part of the alleged compensation for services, which as stated in Issue No. 1 he has disallowed to the extent that such alleged compensation exceeded $6,000 per annum. We have set out in our findings in considerable detail the evidentiary facts concerning the ownership of this stock and it would serve no useful purpose to repeat these facts in this opinion. We are satisfied that the evidence amply supports the finding that petitioner was the owner of 5/6 of these 400 shares and Russell was the owner of 1/6 of them. The 400 shares of Gulf Coast stock were originally acquired with assets belonging to the D. B. McDaniel, Drilling Contractor account but prior to the taxable years here involved petitioner and Russell agreed to take the 400 shares out of the Drilling Contractor account and to own it separate and apart from that business. The evidence seems to well establish that fact. The *180 respondent in his brief places considerable emphasis on the fact that on June 1, 1933, petitioner had issued to Russell a certificate for 50 shares of Gulf Coast stock, and that this so-called mistake had not been noticed by Russell until petitioner called Russell's attention to it late in 1933, at which time Russell told petitioner to void the certificate for 50 shares and to hold the 66 2/3 shares in trust for him. He also places considerable emphasis on the agreement between petitioner and Russell which was entered into in the form of a letter from Russell to petitioner on January 6, 1934, in which Russell stated that if he should die only $30,000 should be paid his estate. We think that whatever inferences may be had from these facts are completely overcome by the testimony of petitioner and Russell as to the ownership of the stock, by the manner in which the stock was acquired, by the written agreement of October 24, 1939, by the fact that petitioner has always paid over or credited to Russell 1/6 of the dividends from the stock and by the fact that when the stock was sold in 1943 for a consideration of $3,150,000, petitioner issued to Russell his personal check for $519,331.22 *181 as representing Russell's 1/6 of the net selling price. There was no agreement or understanding whatever that Russell was ever to return any of the money paid to him by petitioner as representing his 1/6 interest in the 400 shares of the stock in question. Upon this issue we think that the evidence as a whole clearly overcomes the respondent's determination and we have so found as an ultimate fact. Issue No. 3. The question involved here is whether "D. B. McDaniel, Drilling Contractor" is entitled to deduct in 1937 the amount of $5,606.65, which represents the cost of certain casing and other equipment remaining in a dry hole which was drilled in 1936, where the lease on which the dry hole was drilled was not surrendered until 1937. The parties agree upon the amount of the loss but not on the year in which the loss is deductible. Petitioners contend that the loss is deductible in 1937 when the leases were reassigned to the original assignors and rely upon United States v. Sentinel Oil Co., 109 Fed. (2d) 854, certiorari denied 310 U.S. 645; and Hardesty et ux. v. Commissioner, 127 Fed. (2d) 843. *182 The respondent contends in his brief that the issue here presented was not raised in the Sentinel case as it does not appear from the facts in that case whether the alleged loss there in question was physical equipment or intangible drilling costs, and that "Where, as here, there is evidence of the actual cost of the casing and other equipment in the well which was definitely abandoned and forever lost in 1936, there appears no sound reason why the loss thereby sustained should be postponed until a later year in which the property was reassigned to the lessor." The respondent cites no regulation or decision in support of his contention. We do not agree with the respondent as to this issue. The point made in the Sentinel and Hardesty cases is that where one acquires an interest in an oil property either by lease or otherwise and as a part of the consideration therefor agrees to drill a well or wells upon the property, the cost of carrying out such an obligation represents a part of the cost of the interest in the property and must be capitalized and returned through depletion allowances or when the acquired property is otherwise disposed of. Cf. State Consolidated Oil Co. v. Commissioner, 66 Fed. (2d) 648, *183 certiorari denied 290 U.S. 704. In the recent case of F.H.E. Oil Company, 3 T.C. 13, 28, we said: Petitioners contend that the rule of the Hardesty case does not apply where the well turns out to be as here a dry hole. There is no merit to this contention. United States v. Sentinel Oil Co., supra. Regardless of the outcome, the drilling operation was undertaken as a part of the consideration for the assignment of the lease. * * * In the instant proceeding we think the cost of the casing and other equipment was as much a part of the drilling operation and as much a part of the consideration paid for the assignment of the leases as was any intangible drilling and development costs. We hold that the loss did not occur until 1937 when the leases were abandoned and turned back to the original assignors. Cf. Art. 23 (m)-16 (c) (1) of Regulations 94. Issue No. 4. This issue concerns adjustment (d) for the year 1938. Petitioners now concede that there was additional income from this liquidation in the amount determined by the respondent but have requested that we find the details of the *184 computation which is agreed to by the respondent. This we have done and on this issue respondent is sustained. Issue No. 5. This issue concerns a part of adjustment (i) for the year 1938. Petitioners' assignment of error with respect to that item is as follows: The respondent erred in setting up the amount of $39,999.33 as salary paid to O. C. Russell and in not treating it as a distribution of dividends, and a distribution of profits, a portion of the amount representing a distribution of dividends, in the amount of $34,999.33, to O. C. Russell from the Gulf Coast Drilling & Production Co., since O. C. Russell actually owned one-sixth interest in 400 shares of stock of said Corporation which was held in trust in the name of petitioner, and the balance of said amount, $5,000.00, representing a withdrawal of Joint Venture profits by O. C. Russell. Under Issue No. 2 we have held that Russell was the beneficial owner of 1/6 of the 400 shares of Gulf Coast stock and therefore 1/6 of the dividends when paid belonged to him. When petitioner paid over to Russell his 1/6 of the dividends received in 1938, amounting to $34,999.33, it was not the payment of salary to him but simply *185 the payment of that which already belonged to him. The payment of the $5,000 in question falls within a different category. We have held under Issue 1 that the business of D. B. McDaniel, Drilling Contractor in 1938 was being conducted as a sole proprietorship of D. B. McDaniel, Russell was an employee of this business and as such was entitled to a salary of $6,000 per annum plus 1/6 of the profits as salary or compensation for his services. The $5,000 in question was paid Russell under this provision of the contract. The amount should be included in petitioners' gross income but petitioners are entitled to a deduction as salary or compensation paid Russell in 1938 of $6,000 if that much was paid him, exclusive of any dividends paid him on the Gulf Coast stock. Issue No. 6. This issue concerns adjustment (e) for the year 1939 and has been settled by stipulation. Issue No. 7. This issue concerns adjustment (o) for the year 1939 and adjustment (h) for the year 1940. Adjustment (o) for the year 1939 was the allowance by the Commissioner of the deduction of a salary paid Russell of $6,000. Adjustment (h) for the year 1940 was the same. Petitioner concedes that if we should *186 sustain him under Issue 1, then in a recomputation under Rule 50 no deduction should be made for salary paid to Russell in 1939 and 1940. We have not sustained petitioner in Issue 1 as to the year 1939. Therefore petitioner is entitled to a deduction of $6,000 salary paid to Russell or so much thereof as was paid him in 1939, exclusive of any consideration in this respect of dividends paid Russell on his 1/6 of dividends from Gulf Coast stock. These dividends as we have already held were not payment of salary. Inasmuch as we have sustained petitioner's contention that the business of D. B. McDaniel, Drilling Contractor was a partnership in 1940, no deduction for salary paid to Russell in 1940 will be allowed petitioner in a recomputation under Rule 50. Decisions will be entered under Rule 50. Footnotes
1. SEC. 3797. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * * * *
(2) Partnership and Partner. - The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.↩